CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

SEP 1 6 2008

JOHN F CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| CASSANDRA SEASE,<br><br>    *Plaintiff,*<br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    *Defendant,* | Case No. 5:07cv00086<br><br>**REPORT AND<br>RECOMMENDATION**<br><br>By:   Hon. James G. Welsh<br>         U. S. Magistrate Judge |

The plaintiff, Cassandra Sease, brings this action pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claims for disability insurance benefits and for supplemental security income under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Commissioner's Answer was filed on December 19, 2007, along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered December 20, 2007, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The plaintiff's memorandum of points and authorities was filed on March 3, 2008. Her basic contentions on appeal are that the Commissioner's final decision was based on a flawed assessment of her residual functional capacities and on a failure to consider her depressive disorder to be a "severe" impairment within the meaning of the Act. Both parties have moved for summary judgment, and no written request was made for oral argument.[1]

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's final decision denying benefits.

I.  **Standard of Review**

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of disability insurance benefits or supplemental security income. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.   Administrative History

Alleging a November 22, 2004 disability onset date (R.14,57), the record shows that the plaintiff protectively filed her current applications seeking a period of disability insurance benefits and supplemental security income on or about March 29, 2005. (R.14,57-59,259-261.) In connection with her applications, the plaintiff stated that she was unable to work due to "chronic pain in both feet." (R.70; *see also* R.79-80,81-88,89-95,106-112.)

After her applications were denied, both initially and on reconsideration, a hearing was held on June 27, 2006 before an ALJ. (R.14,24-36,41,47-51,262-268,275.) The plaintiff was present, testified, and was represented by counsel. (R.37-39,43-46,56,275-312.) Bonnie Martindale, was also present and testified as a vocational witness (R.275,313-328.)

3

Utilizing the agency's sequential decision-making process, the ALJ concluded that the plaintiff was insured through December 31, 2009 and that her part-time work activity subsequent to her alleged disability onset date did not constitute substantial gainful work activity within the meaning of the Act. (R.16.) He next concluded that the plaintiff's morbid obesity with back pain, peripheral edema, and bilateral foot pain were "severe" impairments, but neither individually nor in combination did they meet or medically equal one of the listed impairments in 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq*, 416.920(b), and 416.971 *et seq*. (R.16-17.) The ALJ further concluded that the plaintiff's depression "was not a severe impairment" and that she retained "the residual functional capacity to perform a range of light work." (R. 16-22.) After her applications were denied, the plaintiff requested administrative review (R.9-11,269-272.) Her request was denied (R.6-8), and the ALJ's decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III. Facts

The plaintiff was born in 1971 and was thirty-four years of age on the day of the administrative hearing. (R. 57,259.) She is characterized as a "younger individual" under 20 C.F.R. §§ 404.1563, 416.963 and 404.1568 (d)(4). She completed high school and at the time of the hearing was a full-time student at Blue Ridge Community College. (R. 76,280.) Her past relevant jobs include cashiering at Kroger's, Wendy's, Family Dollar Store and Long John Silvers, work as a Certified Nurse's Assistant at the District Home, and production work at Penny Plate and Wayne Tex. (R.71,93,96-104,115-116,285-290.)

4

The plaintiff's medical records document her treatment, beginning in March 2004 by Dr. Theodore B. McKee (Blue Ridge Podiatry) for bilateral pain-related foot problems. (R.135-140.) In his office notes Dr. McKee noted the plaintiff to be "overweight" and to have plantar fasciitis (foot inflammation), calcaneal bursitis (pain in heel area), bilateral foot pain, flat feet, and a nail plate yeast infection. (R.135.) Over the course of the next eighteen months, these pain-related foot problems were treated with anti-inflammatory and steroid medications, with nerve block injections, and with physical therapy. (R.129-130,132-142, 216-222,224-253.) The medical records show that the plaintiff responded only "slowly" to the efforts to decrease lower extremity swelling, that these efforts could have been aided by weight loss, and that continued physical therapy provided only limited alleviation of her bilateral foot pain. (R.141,221,224-225.)

Between June 2005 and May 2006, the plaintiff was also treated by Dr. Scott Young for a number of health-related complaints, including for the same ongoing complaints of chronic bilateral foot pain. (R.184-203.) Among her health-related complaints to Dr. Young, the plaintiff also reported swelling in her legs bilaterally, when ever she was on her feet excessively. (*E.g.*, R.200.) In addition to a continued pharmacologic treatment regime for her foot pain, Lasix tabs were prescribed by Dr. Young for the plaintiff's leg swelling. (R.184-203.)

On referral by Dr. Young, the plaintiff was seen at the University of Virginia Medical Center ("UVAMC") for possible wight reduction surgery due to severe obesity [2] along with attendant

---

[2] When seen at UVAMC on March 19, 2006, the plaintiff's recorded height and weight were 5' 3" and 314 lbs. (R.156.)

degenerative joint disease and low back pain. (.R.155-158,176.). At the conclusion of the UVAMC assessment and after dietary counseling, weight reduction surgery was recommended. (R.153-182.) Although gastric bypass surgery was approved by her health insurance carrier, the record contains no indiction that the plaintiff in fact had this surgery. (R.188-189,299-300; *see also* R.269-272.)

In addition to the evaluation and treatment of her health-related lower extremity problems, the plaintiff also sought treatment for depression. With a good initial response, Wellbutrin was prescribed by Michael Hoffman, M.D. (R.206.) In October 2005, she was referred to Teresa Harmon, Ph.D., a licensed clinical psychologist, by the Virginia Department of Rehabilitative Services for vocational and career counseling, for a psychiatric evaluation and for medication management. (R.204.) Dr. Harmon found the plaintiff to be alert, oriented, and to exhibit anxiety, unease and depressive symptoms. (R.206-207.) The results of a Wechsler intelligence testing by Dr. Harmon demonstrated the plaintiff to have a low average to borderline range of abilities. (R.207-208.)

Responding to a mental impairment questionnaire in May 2006, Dr. Harmon reported the plaintiff's continued use of Wellbutrin without any adverse side effects to control her depressive symptoms. (R.210.) Dr. Harmon described the plaintiff's symptomology to be indicative of only mild depressive symptoms over the preceding year ("current GAF: 65"); she noted no mental problem which would significantly limit the plaintiff's ability to perform unskilled work, and she reported that the plaintiff had experienced only one episode of "moderate" symptom exacerbation in the past. (R.210-214,17.)

As part of the agency's consideration of the plaintiff's applications, the relevant and then available file material was twice reviewed by state agency consultants. Based on a June 25, 2005 review, which included a specific reference to the chronic plantar fasciitis and calcaneal bursitis diagnoses, Dr. Syad Hassan opined that the plaintiff retained the functional ability to lift and/or carry twenty (20) pounds occasionally, the ability to lift and/or carry ten (10) pounds frequently, the ability to stand and/or walk two hours during an eight-hour day, the ability to sit for approximately six hours during an eight-hour day, and the ability to push and/or pull capacity within her lift/carry limitations. (R. 122-128.)

In a second state agency assessment on August 24, 2005, Dr. William Amos concluded that the plaintiff's functional abilities were essentially the same; however, in his opinion the plaintiff's ability to lift and/or carry even on an occasional basis was limited to ten (10) pounds. (R.143-149.) In making this more limiting assessment of the plaintiff's residual functional abilities, Dr. Amos noted his reliance on the treating podiatrist's evaluation dated May 19, 2005. (R.131-132.) This earlier assessment by Dr. McKee which limited the plaintiff's functional capacity to lift and/or carry to no more than "15 pounds" and her functional ability to stand to a period no longer than "1 hour at a time." (R.148.)

In addition to confirming her vocational profile information, at the administrative hearing the plaintiff testified about her then ongoing work and study activities, as well as about her health and functional difficulties. She testified that she received unemployment benefits between November

7

2004 and May 2005,[3] that as a part of her Blue Ridge Community College studies she was participating in a City of Waynesboro student internship program, that she was working part-time as a cashier at Long John Silvers, that she planned to have the gastric bypass surgery, and that she had chronic low back pain, chronic bilateral leg swelling, chronic bilateral foot pain, and depression. (R.280-286.291-304,306-311.)

Appearing to give vocational testimony, Ms. Bonnie Marindale outlined the plaintiff's vocational history, the exertional requirements of her past relevant work, and any relevant transferable skills. (R.313-316.) In response to an initial hypothetical question by the ALJ, Ms. Martindale testified that an individual with the plaintiff's vocational profile and a functional ability to do light work requiring only the occasional carrying of twenty pounds, but with significant postural restrictions [4] and an inability to use foot controls repetitively, would be able perform the plaintiff's past work in the fast food industry or as a cashier and would be able to perform work as an emergency operator. (R.317-318.) Asked to assume further a hypothetical person additionally limited to standing and/or walking no more than two hours during a work day, the vocational witness stated that all of the jobs she had previously identified would be eliminated except cashiering as the plaintiff actually performed it; however, such an individual could alternatively work as an office or order clerk. (R.318-321.) Asked then to assume such an individual additionally limited to lifting and/or carrying no more than fifteen pounds, Ms. Martindale testified that such an individual would still be able to do the cashiering work or would be able to work as a 411 operator. (R.322-323.) If

---

[3] The ALJ noted in his written decision that "[t]he receipt of unemployment benefits indicates that one is ready and willing to work" (R.20); however, the receipt of such compensation "**does not** in itself prove [an] ability to work." *Lackey v. Celebrezze*, 349 F.2d 76, 79 (4th Cir. 1965) (emphasis added).

[4] Postural limitations or restrictions include such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling. *See* e.g., Social Security Ruling 96-9p.

8

such an individual was functionally limited to sedentary work with the same postural restrictions, the vocational witness identified work as an office clerk to be representative of the work which could be performed. (R.423-324.)

IV. **Analysis**

Taking issue with the ALJ's finding that the she has the residual ability to perform a range of light work, including her past work as a cashier and work as an 411 operator, the plaintiff argues that the medical record simply fails to support the ALJ's belief that she can "stand and/or walk for approximately six hours during an 8-hour work day or alternatively sit for six hours during an 8-hour work day (R.18). Additionally, she contends that the ALJ "purposefully refused" to give the requisite consideration of her depressive disorder.

A.

Citing Social Security Ruling ("SSR") 96-2p for the settled principle that an ALJ is precluded from substituting his judgment for the well-supported opinion of a treating source, the plaintiff argues that the ALJ in fact improperly substituted his opinion concerning her residual functional abilities for those of two treating health care providers, Dr. McKee and Dr. Harmon, as well as that of Dr. Amos, a state agency consultant.

In his decision, however, the ALJ stated that his finding that the plaintiff retained the residual functional ability "to perform a range of light work" included specific consideration of the opinion evidence "in accordance with the requirements of 20. C.F.R. 404.1527 and 416.927 and SSRs 96-2p,

9

96-5p and 96-6p." (R.18.) As part of this assessment, the ALJ noted that he gave some probative weight to the opinions of the state agency consultants in accordance with the requirements of 20 C.F.R. §§ 404 .1527 and 416.927. (R.21.) Addressing the treating source opinions, the ALJ specifically noted, "I am persuaded, after reviewing her treating physician's reports, that [the plaintiff's] functional limitations are not more restricting than light exertional limitations which I have factored into the [plaintiff's] residual functional capacity . . . ." (*Id.*)

Without question, an ALJ is required to consider every medical opinion in the record and to determine its proper evidentiary weight. 20 C.F.R. §§ 404.1527(d) and 416.927(d). Likewise, an ALJ is obligated to give a treating source's opinion controlling weight, if it is well-supported by medically acceptable clinical and laboratory diagnostic findings and is not inconsistent with other substantial evidence in the record. *Mastro v. Apfel*, 270 F.3$^d$ 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); SSR 96-2p. Thus, an ALJ must provide reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. *Id.*

In the case now before the court, the ALJ outlined the medical evidence and the testimony (R.18-20); he mentioned the fact that no treating or consulting source had indicated the plaintiff to be functionally disabled (R.20), and he gave specific consideration to Dr. McKee's evaluation of the plaintiff's bilateral foot pain (R.20). The ALJ found that Dr. McKee's assessment was supported by the relevant treatment records, and he noted that this assessment was utilized and relied-upon by Dr. Amos in making the second state agency functional assessment. (R.20-21.) Furthermore, the ALJ considered the plaintiff's self-reported activities of daily living in determining that she was not

10

disabled within the meaning of the Act. (R.18-20.) *See Gross v. Heckler,* 785 F.2$^d$ 1163, 1166 (4th Cir. 1986) (a non-disability finding was held to have been properly based on a plaintiff's daily activities)

The record, therefore, contains substantial evidence to support the ALJ's finding that the plaintiff could perform at least some range of light work, such as the cashier job she was performing on a more than one-half time basis. (R.23,285-286,323). Moreover, the record fails to support the plaintiff's contention that the ALJ either "ignored" or "refused to acknowledge" any medical evidence from which more restricted functional abilities might be arguably inferred.

**B.**

As previously noted, the plaintiff also argues that the ALJ erred in finding her depressive disorder not to be a "severe" impairment (R.16) within the meaning of 20 C.F.R. §§ 404.1520 and 416.920. In essence, this contention is predicated on the Fourth Circuit's holding in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." (quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984)). *See also* 20 C.F.R. § 4040.1520(c).

The facts pertinent to this issue are not in dispute. In early 2006 the plaintiff was diagnosed by Dr. Harmon (and most likely also by Dr. Hoffman) to have a depressive disorder. (R.204,206,207.) Wellbutrin was prescribed by Dr. Hoffman. (*Id.*) It provided the plaintiff with a

"good initial response"(R. 206) without any adverse side effects. (R.210) Although the plaintiff's depression was associated with some decrease in energy and impulse control, and with some mood disturbance and mild difficulty thinking or concentrating, in May 2006 Dr. Harmon's overall prognosis was "good" with only some mild symptoms and social functioning difficulties. (R.210-214.) In addition, she found the plaintiff to have "unlimited or very good" mental abilities and unskilled work-related

aptitudes. (R.212.) Consistent with that assessment, Dr. Young's office notes for the period between June 2005 and May 2006 uniformly record that the plaintiff exhibited "no signs of mood, thought or memory difficulty." [5] (R.184-203.)

Reviewed as a whole, the record provides ample evidence supporting the ALJ's determination that the plaintiff's depressive condition only minimally impacted her ability to do work-related activities. As such it did not amount to a "severe" impairment for 20 C.F.R. §§ 404.1520 and 416.920 purposes. Her mental health prognosis was "good." She was in fact functioning pretty well. She exhibited only "mild" symptoms, and the record demonstrates no more than a slight mental health abnormality which was having no more than a minimal effect her. *See Evans v. Heckler*, 734 F.2$^d$ at 1014.

V. **Proposed Findings of Fact**

---

[5] In her brief, the plaintiff asserts that Xanax (alprazolam) was separately prescribed at some point by Dr. Young, her primary care physician, for anxiety; however, she references the court to no evidence in the record to support this contention.

12

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence;

2. The Commissioner's final decision gave the requisite consideration and weight to the treating source medical opinions;

3. The Commissioner's final decision gave the requisite consideration and weight to the opinions of the state agency consultants, including Dr. Amos;

4. The ALJ did not err in concluding that the plaintiff's depressive disorder was not "severe" within the meaning of the Act;

5. The ALJ's assessment of the plaintiff's residual functional abilities is supported by substantial evidence;

6. Substantial evidence in the record supports the Commissioner's finding that through the decision date the plaintiff retained the residual function capacity to perform a range of light work activity;

7. The plaintiff has not met her burden of proving disability; and

8. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit copy of this Report and Recommendation to all counsel of record.

VII. **Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 15th day of September 2008.

s/ *James G. Welsh*
United States Magistrate Judge